**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FRANK MORABITO, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, AIDING AND ABETTING, AND VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| v. | |
| DIPLOMAT PHARMACY, INC. BRIAN GRIFFIN, PHILLIP R. HAGERMAN, BENJAMIN WOLIN, REGINA BENJAMIN, DAVID C. DREYER, KENNETH KLEPPER and SHAWN C. TOMASELLO, , | **JURY TRIAL DEMAND** |
| Defendants. | |

**ANTHONY L. DELUCA, PLC**
Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
Tel:     (313) 821-5905
Fax:     (313) 821-5906
Email: aldplc@gmail.com
*Attorneys for Plaintiff*
*(Additional Counsel Listed Below)*

**COMPLAINT**

Plaintiff Frank Morabito ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Diplomat Pharmacy, Inc. ("Diplomat" or the "Company"), against Diplomat and the Company's Board of Directors (the "Board" or the "Individual Defendants") (the Board, and the Company are collectively referred to herein as the "Defendants") for

breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to UnitedHealth Group Incorporated, a Delaware corporation ("Parent"), and Denali Merger Sub, Inc., a Michigan corporation and a wholly owned subsidiary of Parent ("Merger Sub," and with Parent, "UnitedHealth") as a result of an unfair process for an unfair price, and to enjoin the expiration of a Tender Offer on a proposed all-cash transaction whereby Diplomat stockholders would receive only $4.00 a share for each share of Diplomat they own (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 9, 2019 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Diplomat will become an indirect wholly-owned subsidiary of Parent, and Diplomat stockholders will receive $4.00 in cash for every share of Diplomat common stock they own.

3.      Thereafter, on January 8, 2020, Diplomat filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.  The Tender Offer is currently set to expire on February 7, 2020.

4.      Defendants breached their fiduciary duties to the Company's shareholders by agreeing to the Proposed Transaction which undervalues Diplomat and is the result of a flawed sales process.  Post-closure, Diplomat shareholders will be frozen out of seeing the return on their investment of any and all of the Company's future profitability.

5.      In addition, the Proposed Transaction is unfair and undervalued for a number of reasons.  Significantly, the 14D-9 describes an insufficient sales process in which the Board rushed through an inadequate "sales process" in which the only end goal was a sale to UnitedHealth.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company

1  Board Members and executive officers will be able to exchange all Company equity awards for
2  the merger consideration.  Moreover, certain Directors and other insiders will also be the
3  recipients of lucrative change-in-control agreements, triggered upon the termination of their
4  employment as a consequence of the consummation of the Proposed Transaction.

5       7.    Furthermore, and in violation of sections 14(e), 14(d) and 20(a) of the Securities
6  and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties,
7  Defendants caused to be filed the materially deficient 14D-9 on January 8, 2020 with the SEC in
8  an effort to solicit stockholders to tender their Diplomat shares in favor of the Proposed
9  Transaction.  The 14D-9 is materially deficient and deprives Diplomat stockholders of the
10  information they need to make an intelligent, informed and rational decision of whether to tender
11  their shares in favor of the Proposed Transaction.  As detailed below, As detailed below, the
12  14D-9 omits and/or misrepresents material information concerning, among other things: (a) the
13  sales process and in particular, certain conflicts of interest for management; (b) the financial
14  projections for Diplomat, provided to the Company's financial advisor Foros Securities LLC
15  ("Foros") for use in its financial analyses; and (c) the data and inputs underlying the financial
16  valuation analyses that purport to support the fairness opinions provided by the Company's
17  financial advisor, Foros.

18       8.    In approving the Proposed Transaction, the Individual Defendants have breached
19  their fiduciary duty of candor and duty to maximize shareholder value by, *inter alia*, (i) agreeing
20  to sell to Diplomat without first taking steps to ensure that Plaintiff and Class members (defined
21  below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii)
22  engineering the Proposed Transaction to benefit themselves and/or UnitedHealth without regard
23  for Diplomat's public shareholders.  Accordingly, this action seeks to enjoin the expiration of the
24  Tender Offer relating to the Proposed Transaction and compel the Individual Defendants to
25  properly exercise their fiduciary duties to Diplomat's shareholders.

26       9.    Defendants breached their fiduciary duties to the Company's stockholders by
27  agreeing to the Proposed Transaction which undervalues Diplomat and is the result of a flawed
28  sales process.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

11.     Plaintiff Defendant Diplomat operates as an independent specialty pharmacy in the United States. The company operates through Specialty and PBM (pharmacy benefit management) segment. It provides specialty infusion pharmacy, patient care coordination, clinical, compliance and persistency program, patient financial assistance, specialty pharmacy training, benefits investigation, prior authorization, risk evaluation and medication strategy, retail specialty, and hub services, as well as clinical and administrative support services to hospitals and health systems. The company primarily focuses on medication management programs for individuals with complex chronic diseases, including oncology, immunology, hepatitis, multiple sclerosis, specialized infusion therapy, and various other serious or long-term conditions. It also offers PBM services, including electronic point-of-sale pharmacy claims management, retail pharmacy network management, mail pharmacy claims management, specialty pharmacy claims management, Medicare Part D services, benefit design consultation, drug review and analysis, consulting services, data access, and reporting, information analysis, and preferred drug management programs to managed care organizations, self-insured employer groups, unions, and third-party healthcare plan administrators and worker's compensation payers. The company was founded in 1975 and is headquartered in Flint, Michigan. Shares of Diplomat common stock are traded on the NYSE under the symbol "DPLO."

12.     Defendant Brian Griffin has been a director of the Company at all relevant times. In addition, Griffin serves as Chairman of the Diplomat Board of Directors and Chief Executive Officer.

13.     Defendant Phillip R. Hagerman has been the Chairman Emeritus since January 2018 and previously served as Diplomat's Chief Executive Officer, a director, and the Chairman

of the Board of Directors since 1991. Mr. Hagerman cofounded Diplomat with his father in 1975.

14.    Defendant Benjamin Wolin has been a director of the Company at all relevant times and serves as independent lead director since 2018.

15.    Defendant Dr. Regina Benjamin has been a director of the Company at all relevant times.

16.    Defendant David C. Dreyer has been a director of the Company at all relevant times.

17.    Defendant Kenneth Klepper has been a director of the Company at all relevant times.

18.    Defendant Shawn C. Tomosella has been a director of the Company at all relevant times.

19.    Defendants identified in ¶¶ 12-18 are collectively referred to as the "Individual Defendants."

20.    Non-Defendant UnitedHealth is headquartered in Rye, New York. According to its website, UnitedHealth focuses exclusively on sectors where it can bring deep domain expertise, decades of experience, an extensive network of industry relationships and significant operating resources to each investment.  The firm currently employs 21 investment professionals and is investing from its fourth fund. UnitedHealth's investors include some of the world's largest foundations, university endowments, family offices and insurance companies.  Since our founding in 1999, UnitedHealth has raised over $3.5 billion of committed capital across four funds, acquiring 31 platform companies and 51 add-on acquisitions to date.

21.    Non-Defendant Argonaut Merger Sub, Inc. is a Delaware Corporation and a direct, wholly-owned subsidiary of Argonaut Intermediate.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d) and Section 20(a) of the Exchange Act.  This action is not a

CLASS ACTION COMPLAINT

collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23. Personal jurisdiction exists over each defendant either because they conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Diplomat has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**CLASS ACTION ALLEGATIONS**

25. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Diplomat common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26. This action is properly maintainable as a class action because:

   a. The Class is so numerous that joinder of all members is impracticable. As of November 12, 2019, there were more than 75 million common shares of Diplomat stock outstanding. The actual number of public stockholders of Diplomat will be ascertained through discovery;

   b. There are questions of law and fact which are common to the Class, including *inter alia*, the following:

      i. Whether Defendants have violated the federal securities laws;

      ii. Whether Defendants made material misrepresentations and/or omitted material facts in the 14D-9; and

CLASS ACTION COMPLAINT

iii.  Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Diplomat and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of Diplomat, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Diplomat to engage in the practices complained of herein.

29. Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company. To diligently comply with these duties, directors of a corporation must:

h. act with the requisite diligence and due care that is reasonable under the circumstances;

i. act in the best interest of the company;

j. use reasonable means to obtain material information relating to a given action or decision;

k. refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

l. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

m. disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Diplomat, are obligated to refrain from:

a. participating in any transaction where the directors' or officers' loyalties are divided;

b. participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c. unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

CLASS ACTION COMPLAINT

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Diplomat, Plaintiff and the other public stockholders of Diplomat, including their duties of loyalty, good faith, and due care.

32.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Diplomat common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

33.     Diplomat operates as an independent specialty pharmacy in the United States. The company operates through Specialty and PBM (pharmacy benefit management) segment. It provides specialty infusion pharmacy, patient care coordination, clinical, compliance and persistency program, patient financial assistance, specialty pharmacy training, benefits investigation, prior authorization, risk evaluation and medication strategy, retail specialty, and hub services, as well as clinical and administrative support services to hospitals and health systems. The company primarily focuses on medication management programs for individuals with complex chronic diseases, including oncology, immunology, hepatitis, multiple sclerosis, specialized infusion therapy, and various other serious or long-term conditions. It also offers PBM services, including electronic point-of-sale pharmacy claims management, retail pharmacy network management, mail pharmacy claims management, specialty pharmacy claims management, Medicare Part D services, benefit design consultation, drug review and analysis, consulting services, data access, and reporting, information analysis, and preferred drug management programs to managed care organizations, self-insured employer groups, unions, and third-party healthcare plan administrators and worker's compensation payers.

34.     The Company's recent financial performance before the announcement of the Proposed Transaction indicated sustained and solid financial performance.  For example, on March 15, 2019, the Company released an earnings results for 4Q 2018 and 2018 Year End results. The Company reported 4th Quarter Revenue of $1,361 Million, an increase of 18% and

Adjusted EBITDA of $43.5 Million, an increase of 63%.  Moreover, Full Year Revenue of $5,493 Million, was an increase of 22% and Adjusted EBITDA of $167.8 Million, an increase of 65%.

35.     Company CEO Griffin spoke on these positive results, stating the 2018 results were "strong," but noted that 2019 would be challenging and a rebuilding year. He nevertheless stated, "I remain confident that Diplomat is making the right investments and executing the right strategy and operational initiatives to leverage our competitive strengths and position Diplomat for future growth and profitability."

36.     While the Company noted a continuing challenging environment in 2019, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

37.     Despite this, the Individual Defendants have caused Diplomat to enter into the Proposed Transaction for insufficient consideration.

***The Proposed Transaction***

38.     On December 9, 2019, Diplomat issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> EDEN PRAIRIE, Minn. and FLINT, Mich. (December 9, 2019) OptumRx, the pharmacy care services business of Optum, and Diplomat, a provider of specialty pharmacy and infusion services, are combining. The agreement calls for the acquisition of Diplomat's outstanding common stock for $4.00 per share through a cash tender offer and assumption of outstanding debt.
>
> Diplomat brings expertise in managing specialty medications that treat patients with complex diseases, such as oncology and immunology, and provides specialized infusion therapies offered in convenient and clinically appropriate settings in all 50 states and Washington, D.C. The combination will support improved health outcomes and reduced prescription drug costs while helping lower the overall total cost of care.
>
> "With its focus in specialty and infusion services, Diplomat has a proven track record of solving the unique challenges facing patients with complex health care needs," said John Prince, chief executive officer of OptumRx. "This combination will expand the innovative specialty pharmacy and infusion solutions OptumRx can offer to the consumers and clients we serve, helping ensure people get the right medications and services at the right time, in the right setting."
>
> The transaction was unanimously approved by the Board of Directors of Diplomat.

CLASS ACTION COMPLAINT

"Our Board of Directors carefully considered a variety of strategic options and concluded that joining OptumRx is in the best interests of our shareholders, employees and the clients and patients we serve," said Brian Griffin, chairman and chief executive officer of Diplomat.

"Since co-founding the company in 1975 with my father, I have had the honor of helping to transform Diplomat into a specialty pharmacy services leader," said Diplomat co-founder and chairman emeritus Philip R. Hagerman, RPh. "This combination will create significant value for Diplomat's specialty pharmacy consumers and clients, and I look forward to the combined companies' future success."

Mr. Hagerman and certain persons and entities affiliated with Mr. Hagerman own approximately 23% of the outstanding common stock of Diplomat, and have agreed to tender their shares in connection with the offer.

### *The Inadequate Merger Consideration*

39.     Significantly, Significantly, the Company's financial prospects and opportunities for future growth, establish the inadequacy of the merger consideration.

40.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.   The proposed valuation does not adequately reflect the intrinsic value of the Company.   Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and increases in net revenue of the Company in recent years.

41.     Moreover, the proposed consideration is well below the Company's 52-week high of $14.53 and, additionally, on the last trading day before the deal was announced, Diplomat stock closed at $5.81 a share.

42.     Clearly, while the deal will be beneficial to UnitedHealth it comes at great expense to Plaintiff and other public stockholders of the Company.

43.     Moreover, post-closure, Diplomat stockholders will be frozen out of their ownership stake in Diplomat, forever disclosing any possibility of reaping the full return on their investment.

44.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for UnitedHealth at the expense of Diplomat stockholders, which clearly indicates that Diplomat stockholders were not an overriding concern in the formation of the Proposed Transaction.

1   *Preclusive Deal Mechanisms*

2       45.     The Merger Agreement contains certain provisions that unduly benefit

3   UnitedHealth by making an alternative transaction either prohibitively expensive or otherwise

4   impossible.  Significantly, the Merger Agreement contains a termination fee provision that is

5   especially onerous and impermissible.  Notably, in the event of termination, the merger

6   agreement requires Diplomat to pay up to $15 million to UnitedHealth, if the Merger

7   Agreement is terminated under certain circumstances.  Moreover, under one circumstance,

8   Diplomat must pay this termination fee even if it consummates any Alternative Proposal (as

9   defined in the Merger Agreement) *within 12 months following the termination* of the Merger

10  Agreement.  The termination fee will make the Company that much more expensive to acquire

11  for potential purchasers.  The termination fee in combination with other preclusive deal

12  protection devices will all but ensure that no competing offer will be forthcoming.

13      46.     The Merger Agreement also contains a "No Solicitation" provision that restricts

14  Diplomat from considering alternative acquisition proposals by, *inter alia*, constraining

15  Diplomat's ability to solicit or communicate with potential acquirers or consider their proposals.

16  Specifically, the provision prohibits the Company from directly or indirectly soliciting,

17  initiating, proposing or inducing any alternative proposal, but permits the Board to consider an

18  unsolicited bona fide written Competing Proposal if it constitutes or is reasonably calculated to

19  lead to a "*Superior Proposal*" as defined in the Merger Agreement.

20      47.     Moreover, the Agreement further reduces the possibility of a topping offer from

21  an unsolicited purchaser.  Here, the Individual Defendants agreed to provide UnitedHealth

22  information in order to match any other offer, thus providing UnitedHealth access to the

23  unsolicited bidder's financial information and giving UnitedHealth the ability to top the superior

24  offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of

25  UnitedHealth.

26      48.     Additionally, as stated in the Press Release announcing the Proposed Transaction,

27  Defendant Hagerman has entered into a tender and support agreement with UnitedHealth,

28

ensuring that all stock held by him/affiliates, which amount to approximately 23% of the outstanding shares of the Company, will be tendered in favor of the Proposed Transaction.

49.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

50.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

*Conflicts of Interest*

51.     The breakdown of the benefits of the deal indicate that Diplomat insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Diplomat.

52.     Certain insiders stand to receive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant stakes in the combined corporation upon the consummation of the Proposed Transaction.  Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, restricted share, RSU, and/or PSU will be canceled and converted into the right to receive cash considerations, as follows  Members of the Company Board and Management will be compensated for their large shares of Company stock and their company options and restricted awards as follows:

| Name | Options (#)(1) | Value of Options ($)(2) | Restricted Stock Units (#)(3) | Value of Restricted Stock Units ($) |
|---|---|---|---|---|
| Brian Griffin | 344,432 | 0 | 875,228 | 3,500,912 |
| Daniel Davison | 87,478 | 0 | 329,628 | 1,318,512 |
| Dave Loschinskey | 132,471 | 0 | 284,528 | 1,138,112 |

53.     Moreover, Defendant Griffin is entitled to a severance package should his employment be terminated under certain circumstances.  This 'golden parachute' package is

- 13 -

significant, and will grant him millions of dollars, compensation not shared by Diplomat's common stockholders.  Specifically, such golden parachute compensation will be paid out to Company insiders as follows:

| Name | Cash(3) | Equity(4) | Pension/ NQDC(5) | Perquisites/ Benefits(6) | Tax Reimbursement(7) | Other | Total |
|---|---|---|---|---|---|---|---|
| **Brian Griffin** *Chief Executive Officer* | $ 3,928,767 | $ 3,500,912 | — | $ 32,974 | — | — | $ 7,462,653 |

54.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Individual Defendants, and the Board at their behest, allowed the Company to be sold far under its proper value in order to secure a quick sale.

55.     Thus, while the Proposed Transaction is not in the best interests of Diplomat stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete 14D-9**

56.     On January 8, 2020, Diplomat filed with the SEC a materially misleading and incomplete 14D-9 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

57.     Specifically, the 14D-9 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the 14D-9 fails to disclose:

a.      The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into in 2019 between Diplomat on the one hand and any interested third party (other than Parent), on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements,

and if so, the specific conditions, if any, under which such provisions would fall away;

b.      Whether the unidentified party referenced as a prospective acquirer in and around July 2018 was part of the later 2019 process and the valuation discussed with this prospective buyer in 2018;

c.      The price per share implied by the various sum-of-the-parts proposals submitted to the Company in 2019;

d.      The specific fee structure with Foros as between a sale of the entire Company and selling off the three referenced business units;

e.      How the Company arrived at the $6.00 per share valuation communicated to UnitedHealth in and around October 7, 2019;

f.      The specific transaction terms required by Party A that the Company claims would have led to closing uncertainty;

g.      What, if any, contact the Company or Foros had with Party A after November 7, 2019;

h.      Why the Company did not allow Party G time to complete its due diligence in an effort to obtain more value for stockholders; and

i.      The nature and timing of any communications regarding future employment of the Company's officers/directors.

*Omissions and/or Material Misrepresentations Concerning Diplomat's Projections*

58.      The 14D-9 fails to provide material information concerning financial projections provided by Diplomat's management and relied upon by Foros' in its analyses.  The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading.  The 14D-9 indicates that in connection with the rendering of Foros' respective fairness opinions, the financial advisors utilized such information.

59.      Accordingly, the 14D-9 should have, but fails to provide, certain information in the projections that Diplomat management provided to the Board and Foros.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by

investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

60. Specifically, the 14D-9 provides certain non-GAAP financial metrics, but fails to for each set of projections, provide the line items used to calculate (i) Adjusted EBITDA, (ii) Adjusted EBIT, (iii) EBITDA, (iv) EBIT. Additionally, the 14D-9 fails to provide a reconciliation of all non-GAAP to GAAP metrics.

61. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

62. Without accurate projection data presented in the 14D-9, Plaintiff and other stockholders of Diplomat are unable to properly evaluate the Company's true worth, the accuracy of Foros' financial analyses, or make an informed decision whether to tender their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Foros*

63. In the 14D-9, Foros describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

64. With respect to Foros's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose the following:

   a. The specific inputs and assumptions used to calculate the discount rate of 10.5%; as well as the WACC for the Company;

   b. The number of Fully-Diluted shares of the Company;

CLASS ACTION COMPLAINT

c.   The range of terminal values for Diplomat; and

d.   The basis for the application of 2.5%–3.5% for perpetual growth rates.

65.   Additionally, there should be explanation for why Foros failed to conduct (or if one was performed, to disclose) a sum-of-the-parts analysis.

66.   Further, there should be explanation for why Foros failed to conduct (or if one was performed, to disclose) either a public companies or precedent transactions comparable analysis.

67.   These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

68.   Without the omitted information identified above, Diplomat's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Diplomat's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

69.   Plaintiff repeats all previous allegations as if set forth in full herein.

70.   The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders and have acted to put their personal interests ahead of the interests of Diplomat's public stockholders.

71.   By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Diplomat.

72.   As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the

CLASS ACTION COMPLAINT

stockholders of Diplomat by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Diplomat to its public stockholders.

73.     Indeed, the Individual Defendants have accepted an offer to sell Diplomat at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

74.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to tender their shares.

75.     The Individual Defendants dominate and control the business and corporate affairs of Diplomat, and are in possession of private corporate information concerning Diplomat's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Diplomat which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

76.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants unfairly deprived Plaintiffs and other members of the Class of the true value of their investment in Diplomat in a process that is not entirely fair.

77.     As a result of the actions of Defendants, Plaintiffs and the Class did not receive their fair portion of the value of Diplomat's assets and businesses and were prevented from obtaining a fair price for their common stock in an unfair transaction

78.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Diplomat's assets and have been and will be prevented from obtaining a fair price for their common stock.

79.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

80.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting Individual Defendants Breach of Fiduciary Duties

### (Against Diplomat)

81.    Plaintiff repeats and reallege each allegation set forth above as if fully set forth herein.

82.    Defendant Diplomat knowingly participated in the Individual Defendants' breaches of fiduciary duty described above by knowingly taking steps to aid and abet the Individual Defendants breaches of fiduciary duty, and rendered substantial assistance to the Individual Defendants' breaches of fiduciary duty.

83.    As a result of Diplomat's aiding and abetting the breaches of fiduciary duty, Plaintiff and Diplomat public stockholders have been harmed.

## THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

84.    Plaintiff repeats all previous allegations as if set forth in full herein.

85.    Defendants have disseminated the 14D-9 with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

86.    Section 14(e) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

87.     The 14D-9 was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the 14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

88.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

89.     The Individual Defendants were at least negligent in filing a 14D-9 that was materially misleading and/or omitted material facts necessary to make the 14D-9 not misleading.

90.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to tender its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer regarding the Proposed Transaction.

CLASS ACTION COMPLAINT

**FOURTH COUNT**

**Violation of Section 14(D) of the Exchange Act**

**(Against all Individual Defendants)**

91.     Plaintiff repeats all previous allegations as if set forth in full herein.

92.     Section 14(d)(4) of the Exchange Act provides:

> Any solicitation or recommendation to the holders of such a
> security to accept or reject a tender offer or request or invitation for
> tenders shall be made in accordance with such rules and
> regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

93.     Rule 14d-9(d) provides, in relevant part:

> Any solicitation or recommendation to holders of a class of
> securities referred to in section 14(d)(1) of the Act with respect to a
> tender offer for such securities shall include the name of the person
> making such solicitation or recommendation and the information
> required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101)
> or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

94.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

95.     The omissions in the Solicitation Statement are material to Plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to

the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

96.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

97.     Plaintiff and the Class have no adequate remedy at law.

**FIFTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

98.     Plaintiff repeats all previous allegations as if set forth in full herein.

99.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the 14D-9 was materially misleading to Company stockholders.

100.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the 14D-9 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the 14D-9.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the 14D-9 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

101.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Diplomat's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the 14D-9 was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the 14D-9 and are therefore responsible and liable for the misrepresentations contained herein.

102.    The Individual Defendants acted as controlling persons of Diplomat within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Diplomat to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Diplomat and all of its employees.  As alleged above, Diplomat is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to

CLASS ACTION COMPLAINT

commence a sale process that is reasonably designed to secure the best possible consideration for Diplomat and obtain a transaction which is in the best interests of Diplomat and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Date:  January 23, 2020

By:      */s/ Anthony L. DeLuca*
Anthony L. DeLuca (P64874)
**ANTHONY L. DELUCA, PLC**
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
Tel:     (313) 821-5905
Fax:     (313) 821-5906
Email: aldplc@gmail.com

**OF COUNSEL**

**BRODSKY & SMITH, LLC**
Marc L. Ackerman
Ryan P. Cardona
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Tel:     (610) 667-6200
Fax:     (610) 667-9029
Email:mackerman@brodskysmith.com
rcardona@brodskysmith.com

- 24 -
CLASS ACTION COMPLAINT